PHILIP BUTTS v. JOHN VOORHEES.

To render a person guilty of a forcible entry and detainer, he must be guilty of "such words, circumstances or actions" in addition to the force requisite to con-stitute an ordinary trespass, "as have a natural tendency to excite fear or appre-hension of danger."

The change in the mode of prosecution from an indictment to a civil action made by our statute, was not designed to effect any alteration in the nature or compo-nent parts of the offence itself. The offence intended to be described in the first section of the act, *Rev. Laws* 349, having been long known antecedently to the enactment of that statute, the terms and phrazes used, ought in just construction to be understood in accordance with their ancient acceptation ; and if any of them had obtained an interpretation from usage, or judicial decision, it ought now to be understood in the same manner.

---

John Voorhees, the plaintiff below, filed a complaint of for-cible entry and detainer against Philip Butts, before one of the

justices of the peace of the county of Warren.   A trial was had, a verdict was given in favor of the complainant, and a judgment was rendered thereon with treble costs of suit.   The defendant removed the proceedings into this court by certiorari.

It appears from a statement of the case, agreed upon by the attorneys of both parties, that Voorhees claimed possession, as lessee of Doct. George Green and wife, and proved on the trial, that he had occupied the lot in dispute for thirteen years, as tenant from year to year, under Mrs. Paul, until last year, and since, under Doctor George Green and wife.   It was enclosed by his fence, and pastured with the rest of the field ; and that a crop of buckwheat had been raised on it by James McMurtrie, with the permission of Voorhees within thirteen years.

Butts, the plaintiff in certiorari, and defendant below, claimed the ownership of the lot, under a conveyance from George R. King, esq, as agent of Matthias O. Halsted, esq.   He attempted to prove, that King had possession ; but it appeared, that though King had considered himself entitled to do what he pleased with the lot, he had never exercised any acts of possession, or ownership over it, further than to walk round it, and shew it to those who came to purchase.

The defendant below, also proved, that the plaintiff had recommended his purchasing the lot from King, on account of the limestone ; and also that he had this spring refused to plough it, with the rest of the field, when requested by Doctor Green to do so, because he said, he did not wish to be at enmity with his neighbors.   Green then ploughed it with his, Voorhees' permission.

Butts entered without permission from Doctor Green or Voorhees, about the first of June last with three or four hands, and while he was quarrying stone, Doctor Green came to him and told him, he was working on his land.   Butts replied, if it was not his own land, he would have nothing to do with it.   He then went away with his hands and tools, and did not return till ten days or two weeks after ; he then returned, and with three hands went to work.   Doctor Green went to him a second time, and warned him off.   He answered, that he thought it was his own land, and refused to go.   Butts made no threats at any time.

When the plaintiff had rested his cause, the defendant's counsel moved for a nonsuit on the ground, that there were no force, threats, or circumstances of terror proved. The justice refused to nonsuit, and expressed an opinion, that sufficient force, and strong hand had been proved to submit the matter to the jury.

The defendant offered to prove the admissions of Doctor Green as to King's possession. This evidence was overruled.

The defendant's counsel required the justice to charge the jury, that some circumstances of force beyond the implied force, which would suffice in an action of trespass, were necessary to sustain this action. The justice did not charge the jury as required, but read the act of the legislature to them, and told them, that if they considered the circumstances of the strong hand, the breaking up of the soil, and taking the limestone without permission of Doctor Green, or Voorhees, sufficient proof of force, they should find for the plaintiff.

It was admitted by the counsel for the plaintiff in certiorari, that there was sufficient evidence of Voorhees' possession before the jury to justify their verdict on that point.

The counsel for the plaintiff in certiorari, heard no mention made by the justice in his charge, of " circumstances of strong hand," but he is willing to admit it was so, provided it is also admitted, that the hands who were with Butts, made no threats, and that there was no proof, that they were used for the purpose of intimidation, or other circumstances to infer it from, except from the mere fact of their being there at work with Butts.

It is also admitted, that there was a fence round the said field, of which the lot in question was part. The lot in question lay upon one side of the field, and adjoining a public road, and along the line of the lot in question, adjoining the said road. Butts, when he entered as aforesaid, entered from the said road upon the lot in question, by taking down the said fence. After entering the first time, and before Butts entered the second time, the fence where Butts entered, was put up by Doct. George Green aforesaid, and when Butts entered the second time, he took down the said fence again, adjoining the said lot in question. After Butts entered the second time, and before the commencement of the action below, Butts erected a fence around the lot in question.

On this statement of facts, it is agreed by the counsel of the parties, that if this court shall consider the entry of Butts with his hands, without the permission of Voorhees, or of Dr. Green and wife, and his quarrying, and taking away limestone, and erecting a fence around the lot, sufficient evidence of force and strong hand to sustain this action, and shall think the evidence of Dr. Green properly rejected by the court, then the judgment of the court below is to be affirmed. But if this court shall consider this evidence of force and strong hand, insufficient to sustain the action, or shall think the justice erred, in rejecting the evidence offered, then the judgment of the court below is to be reversed.

*I. P. B. Maxwell*, for the plaintiff in certiorari, moved to reverse the judgment, and cited *Co. Lit.* 257 ; 2 *Burn's Justice*, 258, title *Forcible Entry and Detainer ; Comyn's Dig.* title *Forcible entry and Detainer ; Rex* v. *Stall*, 3 *Burr* 1998 ; *Rex* v. *Atkyns*, 1706 ; *Rex* v. *Bate and others*, 1731; *Rex* v. *Wilson and others*, 8 D. and E. 357 ; 10 *Mass. Rep.* 403; *Rev. Laws*, 349 ; 1 *John. Rep.* 339 ; 4 *John* 239 ; *Davis* v. *Pierce*, 2 D. and E. 53 ; 1 *Taunton* 141, 142.

*Scudder* argued for the defendant in certiorari, and cited *Rev. Laws*, 349, sec. 1; 10 *Mass. Rep.* 403 ; *Pullen* v. *Boney*, 1 *South.* 127.

EWING, C. J.    The plaintiff in certiorari was found guilty and judgment was rendered against him for the forcible entry and detainer of a strip of land, containing one fourth of an acre, part of a larger field, not all arable and valuable chiefly for its limestone.

The field adjoined a public road and was enclosed by a fence. The defendant entered from the road by taking down the fence, and without the permission of either the complainant or his landlord, George Green.    Three or four hands were with him, and they went to work in quarrying lime stone.    While so engaged Green went to him and told him he was working on his land. Butts said if it was not his land he would have nothing to do with it, and went away with his hands and tools.    In ten days or two weeks, Butts returned with three hands, took down the fence which Green in the mean time had put up, entered the lands, resumed the work of quarrying and took away some lime-

stone. Green warned him off. Butts answered he thought it his own land and refused to go, and afterwards put up a fence about the strip or piece of land in question. Butts made no threats at any time. The hands who were with him made none, "and there was no proof that the hands were used for the purpose of intimidation, or other circumstances to infer it from, except from the mere fact of their being at work with Butts."

These matters are set forth in a statement prepared by the counsel of the parties in order to present the case before us; and in which, without leaving open for examination here any questions as to the opinions expressed by the justice at the trial on a motion for a non-suit, or in his charge to the jury, they have restricted and limited our enquiries by their agreement, that if certain evidence was improperly rejected, or if "the entry of Butts with his hands without the permission of Voorhees or of George Green, and his quarrying and taking away limestone and erecting a fence around the lot," are not sufficient evidence of force and strong hand to sustain the action, the judgment is to be reversed.

The facts, in this case, constitute in my opinion an ordinary trespass, remediable by an action of trespass *quare clausum fregit*, and do not amount to the offence of a forcible entry and detainer, either under the English authorities or according to our statute.

Hawkins says, "A forcible entry ought to be accompanied with some circumstances of actual violence or terror." 2 *Hawk.* 36, *Book* 1, *ch.* 64, *sect.* 25. And again, "The behavior or speech at the time of the entry, must be such as to give just cause of fear of bodily hurt. The speeches must be such as imply a purpose of using force against those who shall make any resistance, as if one say that he will keep possession in spite of all men." *Ibid. sect.* 27. "A threat to spoil another's goods or destroy his cattle, or do him any other such harm, *which is not personal*, is not sufficient." *Ibid. sect.* 28. And again, "A man ought not to be adjudged guilty of a forcible detainer for barely refusing to go out of an house and continuing therein, in despite of another." *Ibid. sect.* 30. Hawkins draws his doctrines from Lambard and Dalton and the ancient cases, and is

himself followed by the late authors.    Coke points out the dis-
tinction between a force implied in every trespass and disseis-
sin, and an actual force, as with weapons, number of persons &c.
and says an entry with such actual force is requisite.    *Co. Lit.*
257, *b.* Comyns says " it shall not be a forcible entry, if after
entry he cuts corn, grass, &c." *Com. dig. tit, force. Ent. A.* 3.
Bacon says " A forcible entry must be with strong hand, with
unusual weapons, or with menace of life or limb."    The term
" strong hand " is thus explained by Ryder, C. J. in *Rex* v. *Ba-
thurst, Sayer* 225.    " The words *manu forti* are understood to
import something criminal in its nature, something more than is
meant by the words *vi et armis.*"    And Rolle had previously
said, *Styles* 135, " these words distinguish this kind of entry
from an ordinary trespass by entering into another's land,
which is not so violent as a forcible entry is supposed to be."
The like doctrine was repeated by the court in *The king* v. *Wil-
son,* 8 *D. and E.* 361.    In *Rex* v. *Storr,* 3 *Burr.* 1698, an indict-
ment for unlawfully entering a yard and digging the ground
and erecting a shed and unlawfully and with force putting
out the owner from the possession and keeping him out,
was quashed, the facts charged not amounting to a forci-
ble entry and detainer.    A distinction was recognized be-
tween the entry into a dwelling house, and putting the tenant
out of possession, as in *Rex* v. *Bathurst,* and the entry into an
uninhabited enclosure.    In *Rex* v. *Bake and others, Ibid,* 1731,
an indictment against sixteen persons for forcible entry in
breaking and entering with force and arms, a close, not a dwel-
ling house, and unlawfully and unjustly expelling the prosecu-
tors and keeping them out of possession, was quashed, on motion,
for not shewing sufficient actual force, violence, unlawful assem-
bly, riot or other circumstances.

The same doctrine is maintained in the American cases.    In
*Pennsylvania* v. *Robinson, Add.* 14, it was held that there must
be *at least* such acts of violence, or such threats, menaces, or ges-
tures as may give a man reason to apprehend personal injury or
danger in standing in defence of his possession.    In *Pennsylva-
nia* v. *Waddle, Add.* 41, the court directed the jury, that if the
meaning and tendency of the words used by the defendant were
to impress on the complainant a terror of personal harm, if he

should proceed to take possession, it was force, but if their meaning was only to signify that he would not give up his claim which he thought a just one, until by a legal trial it was declared unjust, this was not force. In *Commonwealth* v. *Dudley*, 10 *Mass. rep.* 403, it was held that "there must be some apparent violence offered in deed or in word to the person of another, or the party must be furnished with unusual offensive weapons or attended by an unusual multitude of people, all which circumstances would tend to excite terror in the owner and prevent him from claiming or maintaining his rights."

Our statute enacts that if any person shall enter upon or into any lands and detain or hold the same with force or strong hand, or with weapons, or by breaking open the doors, windows or other part of a house, whether any person be in it or not, or by any kind of violence whatsoever, or by threatening to kill, beat or maim the party in possession, or by such words, circumstances or actions, as have a natural tendency to excite fear or apprehension of danger, or by putting out of doors or carrying away the goods of the party in possession, or by entering peaceably and then turning by force or frightening by threats or other circumstances of terror, the party out of possession, every person so offending shall be guilty of a forcible entry and detainer. *Rev. Laws*, 349, *sec.* 1.

The offence intended to be here described, having been long known antecedently to the enactment of this statute, the terms and phrases used, ought, in just construction, to be understood in accordance with their ancient acceptation, and if any of them had obtained an interpretation from usage or judicial decision, it ought now to be understood in the same manner. Thus, to construe the word, force, to mean the force which suffices to constitute an ordinary trespass, would be to remove all distinction between the two acts and render even the entry on uninclosed land, over an ideal boundary, liable to a complaint of forcible entry and an imposition of the heavy penalty of treble costs; a result we are not authorized to suppose was intended by the Legislature. Nor is it a safe or sound construction of the statute, to say that it contains in the disjunctive or alternative, a number of circumstances, as force, strong hand, &c.; that any one of these as for example, force, may constitute the offence;

Butts *v.* Voorhees.

and that as the term, force, is not qualified, whatever may, in legal language, be described as done with force and arms, will bring a party within the offence.  If such had been the intention of the Legislature, they would have contented themselves with the word, force, and not incurred the useless tautology of a number of other phrases, each of which comprehends force.  The just meaning of every part of the section is to be sought and found in a survey of the whole.  The true sense of the whole, may, I think, be thus expressed in the very language of the section.  "Such words, circumstances or actions" in addition to the force requisite to constitute an ordinary trespass, "as have a natural tendency to excite fear or apprehension of danger" render a person guilty of a forcible entry and detainer.

The change in the mode of prosecution from an indictment to a civil action, made by our statute, was not designed to effect any alteration in the nature or component parts of the offence itself.

In the case before us, it appears to me, the essential constituents of this offence are not found.  Taking down the fence is an ordinary act of trespass; and moreover; neither Voorhees nor Green was present.  The number of hands was suited to the work in which they were engaged.  Quarrying and carrying away the limestone were using the property according to its nature and circumstances.  They involved no more force than digging the soil and erecting the shed, in *Rex* v. *Storr.* The answer of Butts, that he thought it was his own land, and his refusal to go, when warned off by Green, are less forcible than unlawfully and with force putting the owner out of possession and keeping him out in *Rex* v. *Storr*, and the unlawful and unjust expulsion of the prosecutors and keeping them out of possession, in *Rex* v. *Bake;* and to refuse to go out of a house, but to continue therein, in despite of another, does not amount, as Hawkins has said, to a forcible detainer.

I am of opinion the judgment against the plaintiff in certiorari ought to be reversed.

DRAKE, J.  The subject of the alleged forcible entry and detainer was a field, valuable principally, on account of a quarry of limestone contained in it.  Voorhees, the plaintiff below,

had been in possession of the field for about thirteen years. Butts purchased it of persons claiming title to it, and entered, without permission from Voorhees, "about the first of June last, with three or four hands; and while he was quarrying stone, Doctor Green, (Voorhees' landlord) came to him and told him he was working on *his* land. Butts replied, if it was not his own land, he would have nothing to do with it. He then went away with his hands and tools, and did not return until ten days, or two weeks after. He then returned, and with three hands, went to work. Dr. Green went to him a second time, and warned him to go off. He answered that he thought it was his own land, and refused to go. Butts made no threats at any time."

It also appeared, that Butts entered the lot in question, by taking down the fence adjoining the road, and while on the premises, made a fence, and parted this lot from the residue of the field, with which it had been connected.

The defendant below moved for a nonsuit, on the ground that no force, threats, or circumstances of terror were proved. This was refused. A charge from the court was requested. And the court intimated to the jury, that the circumstances proved, if believed by them, were sufficient to maintain the action.

A forcible entry and detainer was punishable by indictment at common law; and to establish the offence, it was necessary to prove such force as would constitute a public breach of the peace, 8 *Term Rep.* 357; 3 *Burrows*, 1731. One of the first acts of Parliament on the subject, is that of 5 *Richard 2d, Ch.* 8, which enacts, "that none from thenceforth should make any entry into any lands and tenements, but where entry is given by law, and in such cases, not with strong hand, nor with multitude of people, but only in a peaceable and easy manner." This was followed by other statutes, and by various decisions of the courts, which all appear to have been considered, and closely followed in the framing of our act concerning forcible entries and detainers, *Rev. Laws* 349. By which act, the legislature does not appear to have intended to alter the nature of the offence, but to provide for it, another mode of trial and punishment. In looking into the English adjudications, I find

Butts *v.* Voorhees.

none which extends the offence so far as is required to sustain the plaintiff below in this case. The entry was peaceable. No threats were used to *obtain* possession, nor even to *preserve* it. The defendant entered with such hands and tools as the business of quarrying limestone required. The mere number of hands,. or kind of tools used in conducting a lawful business will not convert a trespass into a forcible entry and detainer. The additional circumstances were, the taking down of the fence, and building of a new one, the breaking of the soil,. and the refusal to go out. All these would not constitute the offence without the addition of threats, or further demonstration of forcible resistance. If Doctor Green had attempted to turn the defendant out, there is some reason to believe that he would have resisted with threats or actual force. He may have done so, or may not. But *mere intention* does not constitute the offence.. There must be actual force, or circumstances calculated to excite fear or apprehension of danger. The circumstances are not to be considered as *evidence* to establish *an intent to do something in future;* but as constituting a *present offence* in themselves. And hence they must have a marked and decisive character, and correspond with the description contained in the statute. If they fall short of this, they are to be relieved against and redressed by actions less *penal.* The party injured, if denied this remedy, is not necessarily put to an ejectment, as supposed by his counsel, on the argument. The action of trespass is the ordinary remedy where the possession of another is invaded. In that action, the party plaintiff can have the full benefit of his possession; and it would probably have answered all purposes in this case, unless the defendant could have shewn. title in himself.

                                      Judgment reversed.

FORD, J. dissented.

CITED in *Mercereau* v. *Bergen,* 3 *Gr.* 247 ; *Cruiser* v. *State,* 3 *Harr* 206- 207; *Berry* v. *Williams,* 1 *Zab.* 428.